**Fred H. Housman, Plaintiff-Appellant, v. C. A. Dawson & Co., a Corporation, Defendant-Appellee.**

Gen. No. 10,955.

Fourth District.

February 20, 1969.

Thomas F. Londrigan and Robert Weiner, of Springfield, for appellant.

Foreman, Rammelkamp, Bradney & Hall, of Jacksonville, for appellee.

CRAVEN, J., delivered the opinion of the court.

This is an appeal from the judgment of the Circuit Court of Menard County entered upon a directed verdict for the defendant and against the plaintiff at the close of the plaintiff's evidence in an action alleged to have been caused by defective lumber sold to the plaintiff's employer by the defendant.

Initially, this appeal was filed in the Supreme Court, it being the position of the appellant that the Supreme Court had jurisdiction on direct appeal because the action of the trial court in directing a verdict deprived the plaintiff-appellant of his right to a jury trial as guaranteed by the state and federal constitutions. The Supreme Court, on motion, transferred the case to this court and in its order of transfer determined that the issue presented on this appeal does not involve a substantial constitutional question as to the right to a trial by jury.

█ In Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967), the Supreme Court observed that it is well-settled that trial courts may constitutionally direct verdicts and that minor variations in the rules governing such action can scarcely render the action unconstitutional. In view of the observation there made and the language of the order of transfer, we believe the issue raised as to the denial of a jury trial by a directed verdict in this case is not a constitutionally debatable issue in the appeal.

We turn now to the merits of this, an essentially products-liability case. The complaint, in three counts, sought to recover from C. A. Dawson & Co. for the injuries incurred. One count stated a cause of action in strict tort liability, one a cause of action in implied warranty, and the other a cause of action in negligence. The is-

226

sues presented and argued on the pleadings were essentially disposed of by the trial court in its ruling on certain motions to strike and dismiss and amendments to the complaint. As we view this record, the ruling of the trial court on the motion for a directed verdict at the close of the plaintiff's case raises an evidentiary question—not one of pleadings—and we will so treat it.

The plaintiff, an employee or "hired man" of one Raymond Wilken, fell and suffered injuries when a two-by-four piece of lumber purchased from the defendant broke under his weight while the plaintiff was constructing a lean-to next to a machine shed on his employer's farm. The plaintiff had had no experience in building this type of structure nor had he had any prior carpentry experience. His employer wanted to construct the lean-to on one side of a dome-type shed. The lean-to was of pole construction and the structure was described to an employee of the defendant at the time of the purchase of the materials. The two-by-fours were to be used as purlins to support the roof of the structure. Two-by-fours, 14 feet long, were placed over and perpendicular to two-by-six rafters. The rafters were some 39 inches from center to center. The poles and rafters were in place at the time of the injury and the plaintiff was on top of the structure and the two-by-fours had been handed to him. He was nailing them in place, standing for support on a two-by-four between two rafters. The two-by-four broke. The plaintiff fell and was injured.

William A. Oliver, professor of civil engineering at the University of Illinois, was called as a witness for the plaintiff. The witness was a registered structural engineer, a member of the American Society for Testing and Materials, and qualified as an expert as to wood structures and lumber standards. This witness described the two-by-four which broke under the weight of the plaintiff as a piece of variable grade material with a knot cluster. He described the knot cluster in the material

and the reasons that the existence of a knot cluster would reduce the strength of the wood. As to the two-by-four under discussion, the witness stated that there was a reduction in strength resulting from the knot caused by cross-graining. He described the two-by-four as of such low strength that it would take a very small load to cause it to fail or to cause it to break. He further stated that upon breaking there would be a sudden break, unlike the breaking of normal wood which breaks with a splintering failure—a slow breaking and one that would give a warning.

Upon cross-examination this witness further stated that a structure in the process of construction should be able to hold any necessary loads caused by the people who are building the structure.

Raymond Wilken, called as a witness by the plaintiff, testified as to the purchase of the lumber from the defendant after having described the shed and the nature of the construction to an employee of the defendant. He further testified that the lumber was loaded in the back of his truck with a forklift at the yard of the defendant. James Harris, a stepson of the plaintiff, who was working with him on the project on the day of the injury, testified that he had handed the two-by-fours up to the plaintiff, and the plaintiff testified as to the manner of the construction, the essentials of which have been previously enumerated.

When asked at the trial whether he had observed anything about the lumber in the way of defects or knots, the plaintiff testified that he did not remember any. On the occasion of an earlier deposition he had stated that he was not looking for any knots and that he had not examined the lumber for the existence of knots.

In directing a verdict for the defendant at the close of the plaintiff's case the trial court enumerated the areas that were troublesome in the case, i. e., whether lumber is or is not a product, whether or not the lumber-

yard which did not mill the lumber is properly a party in a products-liability case, and whether or not the lumber which was intended as support for a roof on a machine shed was misused by the plaintiff.

In allowing the motion the trial court observed that a lumber dealer dealing in hundreds of thousands of boards should not have imposed upon him a duty to inspect each and every board when he is only a conduit, a supplier or a distributor, and does not change or alter the product in any way as received from the lumber mill. He concluded the defendant was not a proper party in a products-liability case based upon that fact and the additional fact that there was no showing that the lumber was defective for the use intended.

■ In our judgment, it was error to direct a verdict. The criterion governing the direction of verdicts in civil cases is now that a verdict should be directed only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967).

■ For purposes of a products-liability case, lumber is a product. As stated by Prosser in his article, The Fall of the Citadel, 50 Minn L Rev 791, 805:

"All types of products are obviously to be included. The list has ranged from automobiles and airplanes to cinder building blocks, glass doors, and paper cups. There is virtually no indication of any limitation to things that are extremely or inherently dangerous in themselves, in spite of all precautions. . . ." (Footnotes omitted.)

In Dunham v. Vaughan & Bushnell Mfg. Co., 86 Ill App2d 315, 229 NE2d 684 (4th Dist 1967), affd, — Ill2d —, — NE2d — (1969), we exhaustively reviewed this court's understanding of the products-liability field. In

affirming Dunham the Supreme Court said at — (— NE 2d at —):

> "Strict liability, applied to the manufacturer of the hammer, Vaughan & Bushnell, extends as well to the wholesaler, Belknap Hardware and Mfg. Co., despite the fact that the box in which this hammer was packaged passed unopened through Belknap's warehouse. The strict liability of a retailer arises from his integral role in the overall producing and marketing enterprise and affords an additional incentive to safety. (Citing case.) . . . ."

One issue remains for discussion—and that issue is whether the injuries of the plaintiff were caused by the defect in the product or whether the injuries were caused by the plaintiff's misuse of the product so as to preclude recovery. Here, again, Dunham is dispositive of the issue. The court there held that this issue was properly one to be submitted to and resolved by a jury. In the context of this case and this record, it was error to direct a verdict for the defendant, and the judgment of the circuit court of Menard County is reversed and this cause is remanded to that court for further proceedings consistent with the views herein expressed.

Reversed and remanded.

TRAPP, P. J. and SMITH, J., concur.