RONA IMMERGLUCK, Plaintiff-Appellant, *v.* RIDGEVIEW HOUSE, INC., Defendant-Appellee.

First District (1st Division)   No. 77-417

Opinion filed October 3, 1977.

Richard T. Wimmer, of Collins & Amos, of Chicago, for appellant.

Barry L. Kroll and David A. Novoselsky, both of Jacobs, Williams, and Montgomery, Ltd., of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff, Rona Immergluck, brought this action against defendant, Ridgeview House, Inc., for injuries purportedly received when she fell to the ground from one of the windows in her fourth-floor room while living in defendant's sheltered-care facility in Evanston, Illinois. Recovery was predicated on negligence in count I, strict liability in count II, and breach of contract in count III. The trial court granted defendant's motion to dismiss count II, and found no just cause to delay enforcement or appeal (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a)), and plaintiff appeals from that order. The issue for review is whether defendant's services and sheltered-care facility constitute "products" within the doctrine of strict products liability.

The complaint alleged that plaintiff had suffered from various mental illnesses manifested in part by suicide attempts, that defendant held itself out to the public as being equipped to care for persons having a history of mental illness, and that defendant assigned plaintiff to a fourth-floor room with no means to prevent egress from the external windows even though defendant was aware of plaintiff's history of mental illness and suicide attempts. Plaintiff further alleged that defendant "produced and sold to the public, a product consisting of services and known as 'sheltered care'" and that the facilities furnished to plaintiff were unreasonably dangerous under the circumstances of plaintiff's known history of suicide attempts.

Defendant denied in its answer that it was aware plaintiff had a history

of suicide attempts and also filed a motion to dismiss count II because no product or defect was alleged.

Plaintiff contends either the sheltered-care facility or services, or both together, constitute a "product" within the meaning of the strict products liability doctrine as applied in Illinois. The Illinois Supreme Court has not defined a product under the doctrine of strict products liability, but in the First District case of *Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923, the appellate court stated that the policy reasons under a strict products liability concept, rather than a dictionary definition, should be considered in determining whether something is a product. The court then concluded that, based on those policy considerations, a building in the nature of a commercial garage was not a product as the term is used in section 402A of the American Law Institute's Restatement of the Law of Torts.

■■ Section 402A was adopted by our supreme court in the case of *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182. The public policy considerations upon which the doctrine of strict liability was based, were set forth as being: (1) the public interest in human life and health, (2) the invitations and solicitations of the manufacturer to purchase the product, and (3) the justice of imposing the laws on the manufacturer who created the risk and reaped the profit by placing the product in stream of commerce. 32 Ill. 2d 612, 619.

It is also widely held that another policy consideration to be considered is that the commercial enterprise distributing the product is in the best position to distribute the risk of injury, proximately caused by a defective condition of its product, by passing the loss on to the public as an additional cost of doing business. *Chapman v. Lily Cache Builders, Inc.* (1977), 48 Ill. App. 3d 919, 923, 362 N.E.2d 811: Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L. J. 1099 (1960); Prosser, Handbook of the Law of Torts 509 (3d ed. 1964).

In the case of *LaRossa v. Scientific Design Co.* (3d Cir. 1968), 402 F.2d 937, 942, the court stated that an additional policy consideration was "the disparity in position and bargaining power which forces the consumer to depend entirely on the manufacturer and the difficulty of requiring the injured party in consumer products cases to trace back along the channel of trade to the source of production in the search for the origin of the defect in order to prove negligence * * *."

Guidance for determining whether something is a product may also be determined from whether the "product" is in the stream of commerce. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 465, 343 N.E.2d 465; *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 21, 329 N.E.2d 785.

■■■ Plaintiff contends that the sheltered-care services provided by

defendant constitute a product within the meaning of doctrine, but Illinois has not extended the doctrine to include services. (*Laukkanen v. Jewel Tea Co.* (1966), 78 Ill. App. 2d 153, 222 N.E.2d 584; *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *Eiler v. Kenneth Jamison & Sons, Inc.* (1972), 8 Ill. App. 3d 889, 290 N.E.2d 322.) In the case of *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897, defendant argued that supplying whole blood was a service in order to avoid the application of the doctrine, but the court found that the situation was more analogous to a sale of goods and imposed liability.

Other jurisdictions have also considered the problem and have concluded with rare exceptions that services are not covered by the doctrine. In *LaRossa Scientific Design Co.* the court set forth the reasons for excluding services as follows:

> "Professional services do not ordinarily lend themselves to the doctrine of tort liability without fault because they lack the elements which gave rise to the doctrine. There is no mass production of goods or a large body of distant consumers whom it would be unfair to require to trace the article they used along the channels of trade to the. original manufacturer and there to pinpoint an act of negligence remote from their knowledge and even from their ability to inquire. Thus, professional services form a marked contrast to consumer products cases and even in those jurisdictions which have adopted a rule of strict products liability a majority of decisions have declined to apply it to professional services. The reason for the distinction is succinctly stated by Traynor, J., in Gagne v. Bertran, 43 Cal. 2d 481, 275 P.2d 15, 20-21 (1954): '[T]he general rule is applicable that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct. * * * Those who hire [experts] * * * are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance.' " (402 F.2d 937, 942-43.)

Also see *Stuart v. Crestview Mutual Water Co.* (1973), 34 Cal. App. 3d 802, 110 Cal. Rptr. 543; *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 P.2d 897, 27 Cal. Rptr. 697; *Swett v. Gribaldo, Jones & Assoc.* (1974), 40 Cal. App. 3d 573, 115 Cal. Rptr. 99.

Plaintiff also contends the sheltered-care facility itself is a product within the meaning of section 402A. However, in *Lowrie v. City of Evanston,* which is dispositive of this case, the court held that a commercial garage was not a "product" within the meaning of the strict liability doctrine based on the enumerated policy considerations. Those same considerations apply to a sheltered-care facility. (Also see *Cox v.*

*Shaffer* (1973), 223 Pa. Super. 429, 302 A.2d 456.) Although courts in other jurisdictions have extended the doctrine to include buildings or parts of buildings, such extension was done so only in the context of mass production. (*Schipper v. Levitt and Sons, Inc.* (1965), 44 N.J. 70, 207 A.2d 314; *Kriegler v. Eichler Homes, Inc.* (1969), 269 Cal. App. 2d 224, 74 Cal. Rptr. 749; *Avner v. Longridge Estates* (1969), 272 Cal. App. 607, 77 Cal. Rptr. 633.) In those cases the important distinctions which allowed recovery were that defendant was in the business of producing or supplying goods of a particular kind and did so on a mass production basis. That principle was explicitly set forth in *Magrine v. Krasnica* (1967), 94 N.J. Super. 228, 227 A.2d 539.

■■ In this case, defendant is clearly not in the business of the mass production or supply of sheltered-care facilities, and the facility in question is not in any stream of commerce. It must also be noted that there is no difficulty of access to a remote manufacturer or supplier, and there is no mass production over which a risk of injury may be distributed.

■■ A further policy consideration concerns the consequences of adopting the rule of strict liability in the instant case. In *Magrine*, the court stated:

> "We must consider, also, the consequences if we were to adopt the rule of strict liability here. The same liability, in principle, should then apply to any user of a tool, other equipment or any article which, through no fault of the user, breaks due to a latent defect and injures another. It would apply to any physician, artisan or mechanic and to any user of a defective article—even to a driver of a defective automobile. In our view, no policy justifies application of the doctrine in such cases." 227 A.2d 539, 547.

■■ In this case, failure to adopt the rule of strict liability does not leave plaintiff without a remedy; counts I, alleging negligence and III, alleging breach of contract were not stricken, and plaintiff is free to proceed on those theories. We hold that neither defendant's sheltered-care services nor the facility itself constitute a "product" within the meaning of section 402A.

For these reasons, the judgment of the circuit court of Cook County, dismissing count II of the complaint, is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.