JOSEPHINE HELLER, Plaintiff-Appellant, *v.* CADRAL CORPORATION *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 79-807

Opinion filed May 21, 1980.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Gerald B. Mullin and Byron L. Landau, of counsel), for appellant.

D'Ancona, Pflaum, Wyatt & Riskind, of Chicago (Selwyn Zun, Robert W. Gettleman, and Jean M. Snyder, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Josephine S. Heller, appeals from the judgment of the circuit court of Cook County which dismissed her complaint against American National Bank and Trust Co., both individually and as land

trustee. Along with American National, plaintiff brought this action against Cadral Corporation, Charles G. Matthies, Inc., and Chicago Federal Savings & Loan, to recover damages for the allegedly defective condition of a condominium unit. Plaintiff sought recovery under the theories of breach of express warranty and strict liability in tort, but her complaint against American National sounded only in strict liability in tort. In granting American National's motion to dismiss the complaint, the trial court ruled that a strict liability action was not maintainable against the trustee because plaintiff's condominium did not constitute a "product" within the doctrine of strict liability in tort. (Plaintiff's suit against defendants other than American National is still pending in the trial court and is not involved in this appeal.) The pleadings disclose the following facts.

American National held legal title, as land trustee, to real estate located at 1555 North Astor Street in Chicago. Condominiums were constructed on this site and sold by Cadral, beneficiary of the trust, through its agent, Matthies. Chicago Federal provided construction mortgage financing.

On December 3, 1976, plaintiff entered into a written contract with Cadral through Matthies to purchase an Astor Street condominium at a price of $200,000. The agreement contained a warranty against latent defects arising out of faulty workmanship or material. Cadral and Matthies agreed to furnish interior work of plaintiff's choosing, including but not limited to, woodwork, flooring and decorating.

After discovering defects in the condominium, plaintiff filed this action seeking $50,000 for the alleged construction defects. In count I, plaintiff sought recovery on the basis of the warranty provision of the sales agreement. Count II, sounding in strict liability in tort, alleged that each of the defendants was engaged in the business of owning, holding title, manufacturing and preparing sales of condominiums to the public as well as their distribution for sale; that plaintiff occupied one such condominium; that it was sold and distributed so as to reach the ultimate user in the same condition as when it left defendants' control; and that the unit was defective in construction and design. More specifically, plaintiff alleged that the defective design of the windows produced condensation and water leakage which damaged plaintiff's personalty, carpeting, and rugs. In response to a demand for a bill of particulars, plaintiff listed various defects and flaws in the condominium including: accumulations of frost on the aluminum window frames; absence of window gutters to collect moisture; windows not designed to prevent moisture and condensation on inner surface of metal; ill-fitting, misaligned cabinet doors; scratched counter tops; improperly connected electrical wiring; light fixtures which did not meet the ceiling; and loose carpeting. After

considering the pleadings and memoranda submitted by the parties, and hearing arguments of counsel, the trial court granted American National's motion to dismiss the complaint against it.

We consider the issue whether a condominium unit is a "product" within the doctrine of strict liability in tort to be dispositive of the appeal.

Plaintiff maintains that a condominium, viewed as a whole or in its component parts, is a "product" under the law of strict products liability as set forth in the Restatement (Second) of Torts §402A (1965). Section 402A, adopted by the supreme court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 621, 210 N.E.2d 182, provides in relevant part:

> "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property * * *."

Comment d of this section provides that the rule "extends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer." Our supreme court has not explicitly defined the term product. This court has stated that in determining whether something is a product, a court should consider the policy reasons underlying the doctrine of strict products liability, rather than dictionary definitions. *Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923.

Public policy considerations advanced to support the imposition of strict liability include the public interest in human life and health, the invitations and solicitations of the manufacturer to purchase the product, representing it as safe and suitable for use, and the justice of imposing the loss on the party who created the risk and reaped the benefit by placing the product in the stream of commerce. *Suvada v. White Motor Co.*; *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 368 N.E.2d 803.

An examination of these policy considerations led this court to conclude in two earlier decisions that a constructed building did not constitute a product as the term was used in section 402A. In *Lowrie v. City of Evanston*, a person died as a result of injuries sustained in a fall from a multi-level open air garage. In reaching the conclusion that a building such as the garage involved was not a product, the court reasoned that the framers of the Restatement did not contemplate a structure such as a building to be a product. It was also observed that other judicial remedies were available against parties responsible for defective construction based on theories of negligence and implied warranty. In *Immergluck v. Ridgeview House, Inc.*, the plaintiff sued to recover damages for injuries incurred in a fall from a window in a sheltered-care facility. Relying on *Lowrie*, this court found that the

sheltered-care facility was not a product. In support of its conclusion, the court noted that in this situation there was no difficulty of access to a remote manufacturer or supplier and no mass production over which to distribute the risk of injury. We find no meaningful distinction between the types of constructed buildings involved in *Lowrie* and *Immergluck* and in the present situation.

Moreover, the same policy considerations relied upon in those cases are controlling here. A finding that a condominium is not a product would not leave plaintiff without a remedy for the alleged defects. No difficulty of access to a remote manufacturer or supplier exists here. Finally, inasmuch as plaintiff has not alleged any personal injury or threat of harm arising from the alleged defects, imposition of strict liability is not required under these circumstances to advance the public interest in human life and health.

Plaintiff urges us to follow decisions from other jurisdictions which have extended the doctrine of strict liability to buildings and component parts of buildings. We believe the facts of the cases cited are distinguishable from the present case and that the reasoning employed by those courts is inapplicable here. Initially, we note that the circumstances in those cases involved either personal injury or extensive property damage. (See, *e.g.*, *Schipper v. Levitt & Sons, Inc.* (1965), 44 N.J. 70, 207 A.2d 314 (infant scalded by hot water drawn from faucet); *State Stove Manufacturing Co. v. Hodges* (Miss. 1966), 189 So.2d 113, *cert. denied sub. nom. Yates v. Hodges* (1967), 386 U.S. 912, 17 L. Ed. 2d 784, 87 S. Ct. 860 (water heater exploded substantially destroying house and personal property); *Worrell v. Barnes* (1971), 87 Nev. 204, 484 P.2d 573 (leaky gas fitting caused fire in the house).) Plaintiff here does not allege any personal harm, but rather, alleges various defects in workmanship or materials. Additionally, those jurisdictions which have applied strict liability principles to a builder-vendor have done so in the context of mass produced homes. (See *Kriegler v. Eichler Homes, Inc.* (1969), 269 Cal. App. 2d 224, 74 Cal. Rptr. 749; *Schipper v. Levitt & Sons, Inc.*) Finally, the cases upon which plaintiff relies focused upon a defect in some product in the home rather than the home itself. Strict liability was thus applied to a contractor who built and/or sold homes containing a defective product.

After considering the public policy reasons set forth by Illinois courts, we find that a condominium such as involved in the present case is not a product within the ambit of strict products liability. Consequently, plaintiff could not sue American National in strict liability in tort. In view of our holding, it is unnecessary to consider whether a strict liability action is maintainable against a land trustee.

For the reasons stated, the judgment of the circuit court of Cook

County dismissing American National as a party defendant is affirmed.

Judgment affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.