**Benita Carol LANTIS, Administratrix of the Estate of Edgar R. Lantis, Deceased, Plaintiff-Appellant,**

**v.**

**ASTEC INDUSTRIES, INC., Defendant-Appellee.**

**No. 80–1929.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1981.

Decided May 12, 1981.

Rehearing and Rehearing En Banc Denied June 30, 1981.

J. Michael Antrim, Noblesville, Ind., Kent M. Frandsen, Lebanon, Ind., for plaintiff-appellant.

H. William Irwin, Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS, Circuit Judge, KUNZIG, Judge,* and CUDAHY, Circuit Judge.

CUMMINGS, Circuit Judge.

In this diversity case, we hold, contrary to the district court's ruling, that the seller-manufacturer of an unassembled product may be found strictly liable under Indiana law for injuries caused by a defective component part of the unassembled product where the product is to be assembled by the purchaser or user.

I

Defendant Astec Industries, Inc. (Astec), a Tennessee corporation, is engaged in the business of designing, manufacturing and selling asphalt mixing plants. In December 1977, Astec entered into a $605,000 contract with E&B Paving Co. (E&B), an Indiana corporation, for the sale of a stationary asphalt mixing plant to be designed by Astec according to certain specifications. The plant was manufactured and pre-erected by Astec at its Chattanooga, Tennessee, facility, where it was viewed by E&B representatives. The plant was then disassembled and its component parts shipped on 23 trucks to E&B's premises in Indiana. Un-der the terms of the sales contract, E&B was to provide the labor for reassembling the plant, while Astec was to provide the necessary drawings and instructions and a Superintendent of Erection to supervise the re-assembly process.

One of the component parts of the plant was a service platform consisting of steel-bar type grating welded to steel beams. Its purpose was to provide access to various pieces of equipment set on the main dryer frame. The dryer frame and service platform were connected with supporting columns and erected by E&B workers on March 22, 1978. The service platform was then 11 feet above ground and had a 30″ x 36″ opening near the center of its floor. When the plant was completed, approximately one-half of this opening would be covered by the frame supporting the intake breaching and combustion chamber.

On March 23, Edgar Lantis, a Vice-President of E&B and the general manager of the plant, climbed by ladder to the service platform to direct a crane operator to lift and swing the intake breaching and combustion chamber into place. While so occupied, Lantis fell through the hole in the service platform and struck his head on the concrete 11 feet below. He died two days later as a result of the injuries sustained in the fall.

On January 19, 1979, Lantis' widow, plaintiff Benita Lantis, initiated the present wrongful death action against Astec for damages in the amount of five million dollars. The action was originally filed in an Indiana state court and thereafter removed by Astec to the United States District Court for the Southern District of Indiana. In her amended complaint, plaintiff alleged that Astec had sold its product "in a defective condition unreasonably dangerous to the user or consumer" in contravention of Section 402(A) of the Restatement of Torts (Second)[1] and also that Astec's negligence caused Lantis' death.

---

* The Honorable Robert L. Kunzig, Judge of the United States Court of Claims, is sitting by designation.

1. Section 402(A) provides as follows:
   "*Special Liability of Seller of Product for Physical Harm to User or Consumer*
     "(1) One who sells any product in a defective condition unreasonably dangerous to the

At the close of the evidence, the district court ruled that Section 402(A) was inapplicable to the case and directed a verdict in favor of Astec on plaintiff's product liability claim. The negligence claim was submitted to the jury, which found in favor of Astec. Plaintiff appeals from the judgment entered against her, contending that the district court erred in withdrawing her Section 402(A) claim from the jury's consideration. We agree and therefore reverse and remand.

## II

Section 402(A) of the Restatement of Torts (Second) (note 1 *supra*) has been expressly adopted as the law of Indiana. *Ayr-Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 300 N.E.2d 335 (1973); see also *Burton v. L. O. Smith Foundry Products Co.*, 529 F.2d 108, 110 (7th Cir. 1976). It is well settled that in order to recover under Section 402(A) in Indiana a plaintiff must establish the following essential elements: (1) the defendant placed a product into the stream of commerce by sale or other means; (2) the defendant was engaged in the business of selling such a product; (3) at the time the product left the defendant's hands it was in a defective condition unreasonably dangerous to the user;[2] (4) the product was expected to and did reach the user without substantial change in its condition; and (5) the defective condition was a proximate cause of the loss complained of. *Shanks v. A.F.E. Industries, Inc.*, Ind.App., 403 N.E.2d 849, 853 (1980); *Ortho Pharmaceutical Corp. v. Chapman*, Ind.App., 388 N.E.2d

541, 545 (1979); *Gilbert v. Stone City Construction Co., Inc.*, Ind.App., 357 N.E.2d 738, 743 (1976).

It is also well settled that a product may be found defective within the meaning of Section 402(A) because of either a manufacturing flaw, a defective design or a failure to warn of dangers in the use of the product. *Shanks v. A.F.E. Industries, Inc.*, supra, 403 N.E.2d at 855; *Dias v. Daisy-Heddon*, Ind.App., 390 N.E.2d 222, 224 (1979); see also *Burton v. L. O. Smith Foundry Products Co., supra*.

In this case, the presence of the second and fifth of the above-listed elements are stipulated. It is also undisputed that the service platform had the 30″ × 36″ opening in its floor when it was shipped by Astec, that it was expected to and did reach E&B without substantial change in its condition, that it was foreseeable that the platform would be used during the assembly of the plant, and that no warnings or instructions were given to E&B or its employees with respect to the opening. Furthermore, Astec's experts admitted at trial that the opening was an unnecessary hazard and could have been covered with a $24 steel grating without affecting the assembly process or the operation of the plant. Indeed, after Lantis' fall, E&B installed such a grating over the opening, which admittedly had been in violation of OSHA regulations and other safety codes.

Plaintiff contends that the above-recited facts established a *prima facie* case under

user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

2. The Restatement makes it plain that it is not necessary that the user, here Lantis, acquire the product directly from the seller. Comment L to Section 402(A) in the Restatement of Torts (Second) 354. The same Comment shows that "user" within the meaning of the Restatement covers "those who are utilizing [the product] for the purpose of doing work upon it * * *." Under Indiana law, "user" has received a liberal construction. *Reliance Insurance Co. v. Al. E. & C., Ltd.*, 539 F.2d 1101, 1104–1105 (7th Cir. 1976).

Section 402(A) and that she was therefore entitled to a jury verdict on the question whether the safety platform was unreasonably dangerous. In deciding to the contrary and withdrawing plaintiff's product liability claim from jury consideration, the district court ruled that Section 402(A) does not cover "assembly-type situations." In so doing, it apparently adopted defendant's argument that a component part of an unassembled product is not itself a product introduced into the stream of commerce within the meaning of Section 402(A). The authority relied on for this proposition was *Lukowski v. Vecta Educational Corp.*, Ind. App., 401 N.E.2d 781 (1980).

In *Lukowski*, the plaintiff's husband was injured when he fell from the top row of some bleachers in a high school gymnasium. His widow brought a product liability action under Section 402(A) against the seller of the bleachers, alleging that they were defective because they had no back guardrail and carried no warning to the public of the danger thereby created. At trial, it was established that the seller had contracted to assemble the bleachers, that the seller had warned the high school not to use the bleachers until they were completed or at least to block off the top five rows, and that the school had nevertheless elected to use the bleachers in their partially completed condition. The trial court directed a verdict in favor of the seller, and the Indiana Court of Appeals affirmed, holding that the seller had not introduced a defective product into the stream of commerce because the partially assembled bleachers had not yet been "delivered" for their intended purpose.

Astec argues that *Lukowski* is controlling in this case because here too the injury occurred prior to the complete assembly of the product for its intended use. This argument reads *Lukowski* too broadly. The principle governing both *Lukowski* and the present dispute is to be found in the more recent case of *Shanks v. A.F.E. Manufacturing Co., supra.* There the court stated that liability under Section 402(A) would lie against the manufacturer of a defective

component part "subject to the limitation that the manufacturer of the component must contemplate that the component will be used in the manner in which it was used," stressing that "[a] manufacturer cannot be responsible for a [use] which it did not recommend or foresee and which it had no way of guarding against * * *." 403 N.E.2d at 856. See also *Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376, 1379–1380 (S.D.Ind.1976); *Cornette v. Searjeant Metal Products, Inc.*, 147 Ind.App. 46, 258 N.E.2d 652 (1970); Prosser, Law of Torts (4th ed. 1971), § 100 at 664; Leibman, "Products Liability," 14 Ind.L.Rev. 1, 28, 30–31, 39, 49–50 (1981).[3]

Applying this principle to the fact situation in *Lukowski*, it is plain that the key factor was not that the bleachers were unassembled at the time plaintiff's spouse was injured but that the sales contract did not contemplate the sale of unassembled bleachers. Since the bleachers were not intended for any use by any person until seller's workmen completed the assembly process, the court concluded that there could be no "delivery" of a product, defective or otherwise, until the bleachers were assembled. In the present case, however, the responsibility for the actual assembly of the asphalt plant was contractually with the purchaser, not the seller. It is true, of course, as Astec argues, that Astec was contractually obligated to supervise the assembly process and that this contractual duty could not be fulfilled until the work was completed. However, *Lukowski* requires only the delivery of a product as contemplated in a contract, not completion of all the terms of the contract itself. Since the contract between E&B and Astec called for delivery of an unassembled asphalt plant, the delivery of a product within the meaning of *Lukowski* occurred when the component parts of the plant were delivered to E&B's premises for assembly by E&B.

Applying the principle enunciated in *Shanks*, liability is not foreclosed in this

**3.** *Lukowski* is criticized in Leibman's article. 14 Ind.L.Rev. at 47–48.

case under Section 402(A) because Astec plainly contemplated, indeed intended, that E&B employees would use the service platform during the assembly process. Since Astec concedes that the plant was expected to and did reach E&B without substantial change in its condition, plaintiff was entitled to go to the jury on the question whether the opening in the platform floor in the absence of warnings concerning that opening constituted "a defective condition unreasonably dangerous" to users within the meaning of Section 402(A).

Reversed and remanded.[4]

---

4. Circuit Rule 18 shall apply to the trial of the product liability issue.